**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Case No:**

Global Weather Productions LLC,

Plaintiff,

v.

Prestige International Insurance Group, Inc., d/b/a Prestige Trucking Insurance,

Defendant.
____________________________________/

JURY TRIAL DEMANDED

## COMPLAINT

Plaintiff Global Weather Productions LLC ("Plaintiff"), by and through its undersigned counsel, for its Complaint against defendant Prestige International Insurance Group, Inc., d/b/a Prestige Trucking Insurance ("Prestige" or "Defendant"), states and alleges as follows:

## INTRODUCTION

1. This action seeks to recover damages for copyright infringement under the Copyright Act, 17 U.S.C. § 101 et seq.

2. Christopher Blake Brown ("Brown") created a video recording of hurricane-force winds overturning semi-trucks on a highway in Amarillo, Texas ("Video 1"). Michael Brandon Clement ("Clement") and Jonathan Petramala ("Petramala") created a video recording of gridlocked evacuation traffic on the Howard Frankland Bridge in Tampa Bay, Florida, ahead of Hurricane Milton ("Video 2") and a video recording of the Hurricane Milton evacuation ("Video 3") (together with Video 1, the "Videos"). Plaintiff owns the copyrights in the Videos and licenses them for various uses, including online and print publications.



SLG SANDERS · LAW GROUP ·

3. Prestige owns and operates the Instagram account prestigetruckingins ("Account 1") and the Facebook page Prestige Trucking Insurance ("Account 2") (together, the "Accounts").

4. Prestige, without authorization, reproduced and publicly displayed the Videos in connection with its commercial activities and engaged in this misconduct knowingly and in violation of the United States copyright laws.

5. Prestige is an insurance agency that sells commercial trucking insurance. It used Plaintiff's footage of semi-trucks being thrown over by wind, and of storm-evacuation traffic, to advertise that insurance, branding Video 1 with the banner "Prestige Trucking Insurance" and pairing it with the solicitation "Call us today for your free quote!"

## PARTIES

6. Plaintiff is a Texas limited liability company and maintains a principal place of business in Hutchinson County, Texas.

7. Defendant Prestige International Insurance Group, Inc. is a Florida corporation with a principal place of business at 7200 W McNab Road, Tamarac, in Broward County, Florida. Prestige was incorporated on September 25, 2014, under Florida Department of State Document No. P14000079030, does business as "Prestige Trucking Insurance," and its President and registered agent is Christina L. Torres.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over the federal copyright infringement claims pursuant to 28 U.S.C. § 1338(a) and 28 U.S.C. § 1331.

9. Prestige is subject to the general personal jurisdiction of this Court because Prestige is incorporated under the laws of Florida and maintains its principal place of business in Broward County, Florida, within this District.

10. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b)(2) and 1400(a) because Prestige may be found in this District, regularly conducts business in this



SLG SANDERS · LAW GROUP ·

District, and a substantial part of the acts and omissions giving rise to Plaintiff's claims occurred in this District, including the unauthorized reproduction, display, distribution, and/or exploitation of Plaintiff's copyrighted work.

**FACTS COMMON TO ALL CLAIMS**

**A. Plaintiff's Copyright Ownership**

11. Plaintiff is a professional videography company that commercially licenses footage of hurricanes, tornadoes, floods, and other severe weather to news organizations, media companies, and commercial users.

12. Brown is an extreme-weather videographer based in the Texas Panhandle whose footage of severe weather has been aired by broadcast and online news outlets, including Fox News. On March 14, 2025, as hurricane-force wind gusts swept the Texas Panhandle, Brown captured video footage of semi-trucks tumbling in the wind in and around Amarillo, footage that local news reported the same day.

13. Clement is a professional storm chaser and aerial cinematographer who has documented hurricanes, tornadoes, floods, and other extreme weather in the field for many years, including Hurricanes Harvey, Dorian, and Beryl and the December 2021 tornado that devastated Mayfield, Kentucky. His footage has been published or broadcast by national news organizations including CBS News, NPR, CNN, and WeatherNation, and his April 2019 drone footage of a tornado in southern Oklahoma, captured from roughly fifty yards away, was widely reported in the national and trade press.

14. Petramala is a professional journalist with more than two decades of experience who has reported on extreme weather from the field since 2018, including as a national weather reporter for AccuWeather. In 2024, Clement and Petramala were among the only journalists to document the aftermath of Hurricane Beryl on the island of Carriacou, Grenada.

15. The footage Brown, Clement, and Petramala create is captured at considerable personal risk, from inside or immediately behind the storms it depicts, and is



SLG SANDERS LAW GROUP

most valuable in the hours and days immediately after an event, when public demand for images of the event is at its peak and licensing demand is greatest.

16. Plaintiff has devoted substantial time, skill, effort, and expense to developing its videography business and creating a portfolio of original videos.

17. Plaintiff's videos are valuable intellectual property assets that are commercially licensed to publishers, media outlets, websites, businesses, and other third parties for authorized use in both digital and print media.

18. Plaintiff is the copyright owner of numerous original video works protected under the Copyright Act, including the Videos that are the subject of this action.

19. Plaintiff maintains exclusive rights under the Copyright Act, including the rights to reproduce, distribute, license, publicly display, and otherwise exploit its copyrighted videos.

20. Plaintiff derives income from the licensing and authorized use of its copyrighted works and maintains exclusive rights in its works pursuant to the Copyright Act.

21. Plaintiff relies upon licensing revenue derived from the authorized use of its videos and actively protects its copyrighted works against unauthorized reproduction, distribution, and display. Unauthorized use of Plaintiff's videos deprives Plaintiff of licensing income, diminishes the value of its copyrighted works, and interferes with the market for authorized licenses.

22. Plaintiff has obtained active and valid copyright registrations from the United States Copyright Office (the "USCO") which cover many of Plaintiff's videos while many others are the subject of pending copyright applications.

23. Plaintiff regularly licenses its videos to media outlets, brands, and commercial entities for a fee. Licenses for commercial and advertising uses, which promote a licensee's own goods or services, command higher fees than licenses for editorial news uses.

SLG SANDERS · LAW GROUP ·

24. On March 14, 2025, Plaintiff first published Video 1. A screengrab of Video 1 is attached hereto as Exhibit 1-1.

25. On June 11, 2025, Video 1 was registered by the USCO under Registration No. PA 2-550-915.

26. On October 7, 2024, Plaintiff first published Video 2. A screengrab of Video 2 is attached hereto as Exhibit 1-2.

27. On November 1, 2024, Video 2 was registered by the USCO under Registration No. PA 2-507-690.

28. On October 7, 2024, Plaintiff first published Video 3. A screengrab of Video 3 is attached hereto as Exhibit 1-3.

29. On October 31, 2024, Video 3 was registered by the USCO under Registration No. PA 2-507-784.

30. Each of the Videos was registered with the USCO within three months after its first publication. See 17 U.S.C. § 412(2). Accordingly, the timing limitations of 17 U.S.C. § 412 do not preclude Plaintiff from recovering statutory damages or attorney's fees for the infringements alleged herein.

31. As first published by Plaintiff, Video 1 bears the conspicuous on-screen notice "** NOT FOR BROADCAST **," the on-screen legend "FOR LICENSING BRETT@LIVESTORMSMEDIA.COM," and the logo of Live Storms Media (together, the "Licensing Notice"). Video 3 bears on screen the name and logo of its author, Jonathan Petramala.

32. Live Storms Media, through Brett Adair, is Plaintiff's authorized licensing agent for the Videos and, at all relevant times, licensed the Videos on Plaintiff's behalf to news organizations and other users who requested permission to use them.

33. In creating Video 1, Brown, and in creating Video 2 and Video 3, Clement and Petramala, personally selected the subject matter, timing, lighting, angle, perspective, depth, lens and camera equipment used to capture the video recordings and made each

SLG SANDERS LAW GROUP

and every artistic determination necessary for the creation of the works.

34. Brown, Clement, and Petramala created the Videos with the intention of them being used commercially and for the purpose of display and/or public distribution.

35. By valid written agreements, Brown, Clement, and Petramala transferred to Plaintiff all right, title, and interest in and to the copyrights in the Videos, together with all claims and causes of action for past, present, and future infringement thereof, including the right to recover damages for infringements occurring before the transfers. Plaintiff is therefore the owner of the copyrights in the Videos and of each claim asserted herein.

**B. <u>Prestige's Infringing Activity</u>**

36. Upon information and belief, Prestige is the registered owner and operator of the Accounts and is responsible for their content.

37. Prestige's website, prestigetrucking.com, identifies its operator as Prestige International Insurance Group, Inc., doing business as Prestige Trucking Insurance, and identifies the Instagram account prestigetruckingins and the Facebook page Prestige Trucking Insurance as Prestige's own social media accounts.

38. The Accounts are a part of and used to advance Prestige's commercial enterprise.

39. Prestige is an insurance agency that markets and sells commercial trucking insurance, including auto liability, motor truck cargo, physical damage, trailer interchange, and bobtail coverage for semi-trucks, tractor-trailers, box trucks, and hot shot vehicles, to truckers and fleet operators throughout the United States.

40. Prestige acts as agent for third-party insurance carriers and is compensated by those carriers, including through commissions on the policies it places, and it also charges its customers agency fees. Each policy Prestige sells therefore generates revenue for Prestige, and its renewals continue to do so; Prestige promotes its franchise program as a "Recurring Revenue Model."



SLG SANDERS · LAW GROUP ·

41. Prestige promotes its services as “An Elevated trucking insurance experience,” invites prospective customers to obtain “Instant insurance quotes,” and states its goal of becoming “the #1 trucking insurance agency conglomerate in the nation.” Prestige has been in business since 2014 and employs dozens of people at its Tamarac headquarters.

42. Prestige uses the Accounts to advertise its trucking insurance and to solicit quote requests from truckers and fleet operators, including through posts displaying Prestige’s toll-free telephone number, (855) 643-3881.

43. The risks Prestige’s policies insure against include damage to trucks and cargo from wind, storms, and accidents on the road. Footage of semi-trucks being overturned by wind on a highway, and of vehicles trapped in storm-evacuation traffic, depicts precisely the losses Prestige’s policies are sold to cover, and is therefore especially effective advertising for Prestige.

44. Prestige used the Videos as advertising content. It superimposed its own name and promotional text on the footage and paired each Video with captions promoting Prestige’s coverage and inviting viewers to contact Prestige, so that each Video served as the centerpiece of an advertisement designed to convert viewers into policyholders on whose policies Prestige earns commissions and fees.

45. Prestige knew, or at minimum recklessly disregarded, that the Videos were protected by copyright and unavailable for its unlicensed commercial use. Video 3, as published by Prestige, displays the name and logo of its author, Jonathan Petramala, on the footage itself. Prestige never contacted Plaintiff, Brett Adair, or Live Storms Media to request a license or permission to use any of the Videos.

46. On or about July 16, 2025, without permission or authorization from Plaintiff, Prestige willfully and volitionally reproduced and publicly displayed Video 1 on Account 1 as part of an on-line social media post at URL: https://www.instagram.com/p/DMMAuPptmia/ (“Infringement 1”). A copy of a



SLG SANDERS · LAW GROUP ·

screengrab depicting Infringement 1 is attached hereto as Exhibit 2-1.

47. Upon information and belief, on or about July 16, 2025, without permission or authorization from Plaintiff, Prestige willfully and volitionally reproduced and publicly displayed Video 1 on Account 2 as part of an on-line social media post at URL: https://www.facebook.com/reel/750923190653307 ("Infringement 2"). A copy of a screengrab depicting Infringement 2 is attached hereto as Exhibit 2-2.

48. In Infringement 1 and Infringement 2, Prestige superimposed over Video 1 the headline "TRUCKS FLIP OVER IN TEXAS WIND STORM," the banner "Prestige Trucking Insurance," and the legend "PART 2," and accompanied the footage with a caption stating, in part: "Even through the storms, we've got your back . . . From rough roads to rainy days, you can count on Prestige for coverage that never quits. Call us today for your free quote!" The caption to Infringement 1 also displays Prestige's telephone number and the hashtags "#PrestigeTruckingInsurance," "#StormReady," "#TruckingCoverage," and "#FreeQuote."

49. Upon information and belief, in or about October 2024, as Hurricane Milton approached Florida, Prestige, without permission or authorization from Plaintiff, willfully and volitionally reproduced and publicly displayed Video 2 on Account 2 as part of an on-line social media post at URL: https://www.facebook.com/reel/1037895051159843 ("Infringement 3"). A copy of a screengrab depicting Infringement 3 is attached hereto as Exhibit 2-3.

50. In the same post, Prestige, without permission or authorization from Plaintiff, willfully and volitionally reproduced and publicly displayed Video 3 ("Infringement 4"). A copy of a screengrab depicting Infringement 4 is attached hereto as Exhibit 2-4. Infringements 1 through 4 are referred to collectively as the "Infringements."

51. In Infringement 3 and Infringement 4, Prestige superimposed over Video 2 and Video 3 the legend "WE HOPE YOU ALL STAY SAFE DURING THIS STORM!" and accompanied them with a caption stating, in part: "In the midst of this storm, our

SLG SANDERS · LAW GROUP ·

thoughts are with every driver on the road. May you find safety and strength as you navigate the challenges ahead." As displayed in Infringement 4, Video 3 continued to bear Petramala's name and logo.

52. In each instance, Prestige did not use the Videos to report on, comment on, or criticize the Videos themselves. Prestige used the Videos as advertising content to promote its trucking insurance business to the truckers and fleet operators who make up its customer base.

53. The Infringements are copies or substantially similar copies of Plaintiff's Videos, including protectable elements such as composition, subject matter, timing, angle, lighting, perspective, and overall expressive content.

54. The Infringements each include a URL ("Uniform Resource Locator") that was accessible to the public and remained available for viewing for a non-transitory period of time.

55. Upon information and belief, Prestige takes an active and pervasive role in the creation, selection, acquisition, licensing, editing, publication, posting, promotion, and display of content appearing on the Accounts, including Plaintiff's Videos.

56. Prestige exercised control over the content published on its Accounts and was responsible for selecting, uploading, and displaying the Videos. Prestige used the Videos in furtherance of its commercial interests and derived financial benefit from increased user engagement, brand promotion, and/or sales.

57. Upon information and belief, Prestige directly contributes to and exercises control over the content published on the Accounts by, inter alia, utilizing employees, agents, contractors, administrators, editors, moderators, social media managers, and other representatives acting on its behalf (collectively, the "Representatives").

58. Upon information and belief, Prestige vested its Representatives with actual and/or apparent authority to create, select, upload, publish, edit, modify, remove, monitor, and otherwise manage content appearing on the Accounts on Prestige's behalf.

SLG SANDERS LAW GROUP

59. Upon information and belief, the Representatives acted within the course and scope of their agency, employment, contractual relationship, and/or other authorized relationship with Prestige when creating, selecting, uploading, publishing, displaying, promoting, and/or distributing the content containing Plaintiff's Videos.

60. Upon information and belief, Prestige authorized, directed, ratified, approved, and/or knowingly permitted the actions of its Representatives with respect to content appearing on the Accounts, including the content containing Plaintiff's Videos.

61. Upon information and belief, the Representatives actively reviewed, monitored, edited, managed, moderated, and otherwise exercised control over content appearing on the Accounts. As a result, Prestige had actual and/or constructive knowledge of the content published thereon, including the Infringements.

62. Upon information and belief, Prestige maintained the right and ability to supervise, control, review, approve, modify, remove, and otherwise regulate content appearing on the Accounts and exercised such control through its Representatives acting within the course and scope of their authority.

63. Upon information and belief, the Videos were intentionally and willfully selected, published, displayed, and distributed by Prestige.

64. Upon information and belief, Prestige engaged in the Infringements knowingly and in violation of applicable United States copyright laws.

65. Upon information and belief, Prestige exercised editorial, managerial, and operational control over the content appearing on the Accounts.

66. Upon information and belief, Prestige has the legal right and ability to control and limit the infringing activities on its Accounts and exercised and/or had the right and ability to exercise such right.

67. Upon information and belief, Prestige monitors the content on its Accounts.

68. Upon information and belief, Prestige has received a financial benefit directly attributable to the Infringements.

69. Upon information and belief, the Infringements increased engagement with the Accounts and generated additional audience traffic, brand visibility, consumer interest, promotional value, and commercial value for Prestige.

70. Upon information and belief, Prestige distributed the Infringements to a broad audience through the Accounts and derived commercial value from the resulting user traffic, engagement, advertising impressions, and/or promotional exposure.

71. Upon information and belief, Prestige derived commercial value from the resulting audience engagement, publicity, promotional exposure, brand visibility, audience growth, increased traffic, and related business-development opportunities associated with the Infringements.

72. Upon information and belief, Prestige at all times had the ability to stop the reproduction and display of Plaintiff's copyrighted material.

73. Prestige's use of the Videos harmed the actual market for the Videos.

74. Prestige's use of the Videos, if widespread, would harm Plaintiff's potential market for the Videos.

75. Prestige used the Videos for commercial purposes to promote its trucking insurance business and solicit truckers and fleet operators to purchase policies through Prestige, thereby deriving promotional and commercial value from Plaintiff’s copyrighted works without paying the license fee otherwise required for such use.

76. Prestige's unauthorized use usurps the market for licensed uses of the Videos and undermines Plaintiff's ability to license its work to other commercial entities.

77. On May 28, 2026, Plaintiff, through counsel, notified Prestige of the infringing activity described herein, and on June 29, 2026, Plaintiff sent Prestige a second notice demanding that Prestige cease and desist from its unauthorized use of Plaintiff’s copyrighted works.

78. Despite receiving notice of Plaintiff’s claims, Prestige has not resolved them, thereby necessitating the commencement of this action.



SLG SANDERS LAW GROUP

79. The commencement of this action was therefore necessary to protect Plaintiff's rights under the Copyright Act.

80. As a result of Prestige's misconduct, Plaintiff has been substantially harmed.

**FIRST CAUSE OF ACTION**
***(Direct Copyright Infringement, 17 U.S.C. § 501 et seq.)***

81. Plaintiff repeats and incorporates by reference the allegations contained in paragraphs 1 through 80, as though set forth in full herein.

82. The Videos are original, creative works in which Plaintiff owns valid copyrights.

83. The Videos are properly registered with the USCO and Plaintiff has complied with all statutory formalities under the Copyright Act and under regulations published by the USCO.

84. Plaintiff has not granted Prestige a license or the right to use the Videos in any manner, nor has Plaintiff assigned any of its exclusive rights in the copyright to Prestige.

85. Without permission or authorization from Plaintiff and in willful violation of Plaintiff's rights under 17 U.S.C. §106, Prestige improperly and illegally copied, reproduced, distributed, adapted, and/or publicly displayed works copyrighted by Plaintiff thereby violating one of Plaintiff's exclusive rights in its copyrights.

86. Prestige also prepared unauthorized derivative works based upon the Videos by superimposing its own name, headlines, and promotional text over the footage, in violation of Plaintiff’s exclusive right under 17 U.S.C. § 106(2).

87. Prestige's reproduction of the Videos and display of the Videos constitutes willful copyright infringement.

88. Upon information and belief, Prestige willfully infringed upon Plaintiff's copyrighted Videos in violation of Title 17 of the U.S. Code, in that Prestige used,



SLG SANDERS LAW GROUP

published, communicated, posted, publicized, and otherwise held out to the public for commercial benefit, Plaintiff's original and unique Videos without Plaintiff's consent or authority.

89. As a result of Prestige's violations of Title 17 of the U.S. Code, Plaintiff is entitled to an award of actual damages and disgorgement of all of Prestige's profits attributable to the infringements as provided by 17 U.S.C. § 504 in an amount to be proven or, in the alternative, at Plaintiff's election, an award for statutory damages against Prestige for each copyrighted work infringed pursuant to 17 U.S.C. § 504(c).

90. As a result of Prestige's violations of Title 17 of the U.S. Code, the court in its discretion may allow the recovery of full costs as well as reasonable attorney's fees and costs pursuant to 17 U.S.C. § 505 from Prestige.

91. As a result of Prestige's violations of Title 17 of the U.S. Code, Plaintiff is entitled to injunctive relief to prevent or restrain infringement of Plaintiff's copyright pursuant to 17 U.S.C. § 502.

SLG SANDERS · LAW GROUP ·

**<u>SECOND CAUSE OF ACTION</u>**
***(Vicarious Copyright Infringement)***

92. Plaintiff repeats and incorporates by reference the allegations contained in paragraphs 1 through 80, as though set forth in full herein.

93. This claim is pleaded in the alternative, to the extent any of the Infringements was uploaded or published by a Representative or other person acting on Prestige’s behalf rather than by Prestige itself.

94. Each person who uploaded and displayed the Videos on the Accounts directly infringed Plaintiff’s exclusive rights under 17 U.S.C. § 106.

95. Prestige had the right and ability to supervise and control that infringing activity, including because Prestige owns and controls the Accounts, authorized its Representatives to publish content on them, and could remove any post from them at any time.

96. Prestige received a direct financial benefit from the infringing activity because the Videos were the centerpiece of advertisements soliciting purchases of commercial trucking insurance, on which Prestige earns commissions and fees, and drew prospective customers to Prestige's services.

97. Prestige is therefore vicariously liable for the infringement of Plaintiff's copyrights in the Videos.

98. As a result, Plaintiff is entitled to actual damages and Prestige's profits under 17 U.S.C. § 504(b) or, at Plaintiff's election, statutory damages under 17 U.S.C. § 504(c), together with costs and reasonable attorney's fees under 17 U.S.C. § 505.

## THIRD CAUSE OF ACTION
### *(Contributory Copyright Infringement)*

99. Plaintiff repeats and incorporates by reference the allegations contained in paragraphs 1 through 80, as though set forth in full herein.

100. This claim is pleaded in the alternative, to the extent any of the Infringements was uploaded or published by a Representative or other person acting on Prestige's behalf rather than by Prestige itself.

101. Prestige knew or had reason to know of the infringing activity, including because the Infringements were published on Prestige's own Accounts to advertise Prestige's own services, beneath captions identifying Prestige and soliciting business for it.

102. Prestige induced, caused, or materially contributed to the infringing activity by directing and authorizing its Representatives to publish storm-related promotional content on the Accounts, by furnishing the Accounts through which the Videos were displayed, and by maintaining the Infringements on the Accounts.

103. Prestige is therefore contributorily liable for the infringement of Plaintiff's copyrights in the Videos.

104. As a result, Plaintiff is entitled to actual damages and Prestige's profits

SLG SANDERS · LAW GROUP ·

under 17 U.S.C. § 504(b) or, at Plaintiff's election, statutory damages under 17 U.S.C. § 504(c), together with costs and reasonable attorney's fees under 17 U.S.C. § 505.

**JURY DEMAND**

105. Plaintiff hereby demands a trial of this action by jury.

**PRAYER FOR RELIEF**

**WHEREFORE** Plaintiff respectfully requests that the Court enters a judgment finding that Prestige has infringed on Plaintiff's rights to the Videos in violation of 17 U.S.C. §501 *et seq.* and therefore award damages and monetary relief as follows:

a. finding that Prestige directly, vicariously, and/or contributorily infringed Plaintiff's copyright interest in and to the Videos by copying, reproducing, distributing, publishing, and publicly displaying them without a license or consent;

b. for an award of actual damages and disgorgement of all of Prestige's profits attributable to the infringements as provided by 17 U.S.C. § 504(b) in an amount to be proven or, in the alternative, at Plaintiff's election, an award for statutory damages against Prestige for each copyrighted work infringed pursuant to 17 U.S.C. § 504(c), whichever is larger;

c. for an order pursuant to 17 U.S.C. § 502(a) enjoining Prestige from any infringing use of any of Plaintiff's works;

d. for costs of litigation and reasonable attorney's fees against Prestige pursuant to 17 U.S.C. § 505;

e. for pre-judgment interest as permitted by law; and

f. for any other relief the Court deems just and proper.

SLG SANDERS · LAW GROUP ·

DATED: October 13, 2026

**SANDERS LAW GROUP**

By: *__/s/ Craig Sanders__*
Craig Sanders, Esq. (Fla Bar 0986586)
333 Earle Ovington Blvd, Suite 402
Uniondale, NY 11553
Tel: (516) 203-7600
Email: csanders@sanderslaw.group
File No.: 145492

*Attorneys for Plaintiff*

SLG SANDERS · LAW GROUP ·